UNITED STATES of America, ex rel.

Gary G. RUSH #42029, Appellant,

v.

Edward G. ZIEGELE, Superintendent of Leesburg (NJ) State Prison.

No. 72-1513.

United States Court of Appeals,
Third Circuit.

Argued Jan. 8, 1973.

Decided March 5, 1973.

Ralph J. Kmiec, Kmiec & Palumbo, Camden, N. J., for appellant.

George F. Kugler, Jr., Atty. Gen. of New Jersey, Fred H. Kumpf, Deputy Atty. Gen., Department of Law & Public Safety, East Orange, N. J., for appellee.

Before McLAUGHLIN, VAN DUSEN and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

State prisoner Gary G. Rush appeals from the order of the District Court for the District of New Jersey denying his petition for a writ of habeas corpus.[1] Rush claims that he is being held in custody unconstitutionally because (1) an involuntary confession was admitted into evidence during his trial, and (2) a number of trial court errors, when taken as a whole, amounted to deprivation of his right to a fair trial. We find no merit in either of appellant's claims and therefore affirm the order of the district court.

Rush was tried and convicted in 1964 for the January 18, 1962, felony murder of the co-owner of the Farm Tavern, Camden County, New Jersey.[2] A confession that he was involved in the murder, which Rush had made to detectives on December 26, 1962, was entered into evidence. Its admissibility had been approved by the trial court judge after a suppression hearing was held outside the presence of the jury.

Evidence presented at the suppression hearing established that Rush was 17 years old at the time he was questioned while confined as a juvenile offender at the Annandale Reformatory. He had a below average IQ, had been treated for mental illness at the Trenton State Mental Hospital from July 3 to September 17, 1962, and may have been schizophrenic at age 13. The testifying doctors also stated that Rush had been discharged from the state hospital because he had undergone a remission. The detectives who questioned Rush testified that the interrogation from 1:00 P.M. to 4:45 P.M. on December 26 had been conducted without threats, beatings or use of profanity. They said Rush had been allowed to attend supper and had voluntarily returned to confess after the meal.

---

1. The district court opinion is reported at 335 F.Supp. 434 (D.N.J.1971).

2. The facts of the crime are more fully set out in the affirmance of Rush's conviction on direct appeal. State v. Ordog, 45 N.J. 347, 212 A.2d 370 (1965).

A quite different version of the interrogation—eight hours of constant questioning accompanied by beatings, threats and profanities—was given by Rush at trial, but he refused to testify at the suppression hearing:

MR. KMIEC [Attorney for Rush]: If your Honor pleases at this time, I think the defendant Gary Rush wishes to make a statement for the record.

GARY RUSH: I'd rather not take the stand. At this point I would rather tell my story to the jury.

THE COURT: All right.

MR. KMIEC: I have advised Mr. Rush it's his decision to make, and that was his response to me, and I wish to make it clear for the purposes of the record.

THE COURT: All right, I would like to ask the defendant, is this a decision of your own free will?

GARY RUSH: Yes sir it is.

THE COURT: All right.

Based on the evidence presented at the hearing, the trial judge found that Rush was mentally sane at the time of his confession and that "he did know the nature and quality of his acts." He concluded:

I am satisfied that the testimony of the State Police officers is quite accurate, there appears to be nothing from their testimony which I have here which would lead me to any different conclusion than that these confessions were voluntary and [it] should be noted at this time that the defendant on his own motion has declined to take the stand to deny any of the testimony or to shed any light on the situation, which might have otherwise been helpful to the court.

On direct appeal, the trial court's determination of voluntariness was affirmed. The New Jersey Supreme Court stated that the admissibility of the confession could not be questioned because Rush advanced no sufficient reason to explain his refusal to testify at the suppression hearing. 212 A.2d at 382. On petition for a writ of habeas corpus, the district court also denied Rush's claim that the confession was made involuntarily. It held no evidentiary hearing, evidently believing that a full and fair hearing had been given by the state court. 335 F.Supp. at 436–437.

On this appeal of the denial of a writ of habeas corpus, appellant Rush bases his claim that the confession was given involuntarily on his statement of the facts surrounding the interrogation, as he testified to them at trial. He claims the interrogation was coercive in light of the protracted time it took, Johnson v. Pennsylvania, 340 U.S. 881, 71 S.Ct. 191, 95 L.Ed. 640 (1950), and the low mental capacity of defendant, Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). The State, relying on the description of the interrogation given by the detectives, argues that Rush's will was not "overborne," and thus the confession was voluntary. United States ex rel. Russo v. New Jersey, 438 F.2d 1343 (3d Cir. 1971); United States ex rel. Bishop v. Rundle, 309 F.Supp. 312 (E.D. Pa.1970).

■ The trial judge must determine whether a confession was made voluntarily before allowing it to be submitted to a jury. Jackson v. Denno, 378 U. S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). Rush's trial was completed before *Jackson* was written, but the Court's holding is to be given retroactive effect. *See* Johnson v. New Jersey, 384 U.S. 719, 727–729, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Linkletter v. Walker, 381 U.S. 618, 639 n. 20, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Factual findings in state court proceedings are presumed correct unless the fact-finding procedures were not adequate to afford a full and fair hearing, or unless material facts were not adequately developed. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed. 2d 770 (1963), now codified in 28 U.S.C. § 2254(d)(2) and (3). Determination of whether a confession was made voluntarily, however, is a mixed question of fact and law. Federal courts exercising habeas corpus jurisdiction, therefore, cannot abdicate their responsibility to

assess whether state court judges have correctly applied federal constitutional standards. Watts v. Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801 (1949); United States ex rel. Thomas v. New Jersey, 472 F.2d 735, 738 (3d Cir. 1973). Two questions thus are presented by appellant's claim that his confession should not have been submitted to the jury: (1) Was an adequate fact-finding hearing conducted by the state trial court? and (2) Was the trial court correct in determining Rush's confession was given voluntarily?

■■ We find that the fact-finding procedure employed in the state court was adequate to give appellant a full and fair hearing. Rush was given an opportunity to rebut the statements of detectives as to the details of the interrogation. Had Rush testified at the suppression hearing, as he did subsequently at trial, to eight hours of beatings and threats, the trial judge would have had to weigh his credibility against that of the detectives. In the absence of Rush's testimony, however, the judge did not have such an opportunity. Rush's refusal to testify at the hearing was a knowing and voluntary waiver of his right to present evidence to demonstrate the involuntariness of the confession. Inexcusable neglect of a defendant to present evidence crucial to his constitutional claims precludes defendant from having the right to a second opportunity, such as a habeas corpus hearing, to set forth evidence supporting his allegations. Townsend v. Sain, 372 U.S. 293, 317, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Fay v. Noia, 372 U.S. 391, 439, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); compare Price v. Johnston, 334 U.S. 266, 289–290, 68 S.Ct. 1049, 92 L.Ed. 1356 (1948), Wong Doo v. United States, 265 U.S. 239, 44 S.Ct. 524, 68 L.Ed. 999 (1924).

■■ The trial judge here explicitly asked Rush whether his refusal to testi-fy was voluntary. Rush said it was. Rush's lawyer informed the court that he had discussed this decision with his client. Rush has not alleged in his petition for habeas relief that his decision not to testify was involuntary, or that it was based on a misunderstanding of the possible consequences of refusal. In light of such a waiver, Rush is foreclosed from arguing at this point that he has a right to a second hearing on the voluntariness of his confession. Respect for the integrity of the state fact-finding process demands that defendants not be allowed to intentionally withhold information from it in order to assure a second federal hearing on the same issue. The state suppression hearing was, therefore, as full and fair a fact-finding process as appellant would allow it to be.

■■ Having found that the state suppression hearing was adequate, it is still necessary to determine whether the trial court applied the correct federal standards in determining the confession was voluntary. The evidence presented at the hearing, although not demonstrating that Rush was insane at the time of the confession, did portray him as a man with a history of mental illness and low mental capacities. Such proof is important in determining what amount of coercion will render a confession involuntary. Spano v. New York, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959); Fikes v. Alabama, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957); Haley v. Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948); Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936). The evidence before the trial judge at the suppression hearing, however, did not indicate the presence of coercion. Questioning had continued for less than four hours when detectives told Rush the interrogation was completed and allowed him to go to dinner;[3] he

3. Long periods of interrogation have been deemed to constitute coercion which will render a confession involuntary, Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed. 2d 948 (1961); Turner v. Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810 (1949); Johnson v. Pennsylvania, 340 U.S. 881, 71 S.Ct. 191, 95 L.Ed. 640 (1950); but none of these cases involved a period as short as four hours.

voluntarily returned after dinner to make his confession. In the absence of any showing of coercion, we cannot find that Rush's mind was overborne, despite his history of intermittent mental illness. The trial court was correct in its determination that Rush's confession was voluntary and could be submitted to the jury.

 Although a different conclusion as to whether the confession was made voluntarily might be drawn if all, or even parts, of Rush's at-trial story of the interrogation were accepted, those facts were not before the trial judge at the crucial point in the judicial process when the determination as to voluntariness was made. A defendant may waive his right to exclude from the jury evidence, even evidence obtained unconstitutionally, as long as his waiver is made knowingly and voluntarily. After such a waiver, a defendant cannot ask that the issue of admissibility be retried de novo.[4]

Moreover, in compliance with his request at the suppression hearing, petitioner had an opportunity at trial to state his version of the allegedly coerced confession to the jury. He sought by his testimony before the jury to show them that he had been subjected to physical and psychological coercion by the police during their questioning of him at Annandale. The trial judge instructed the jury to "disregard . . . completely and accord no evidential weight whatsoever" to the confession unless they determined it was given voluntarily.

 Appellant's other contentions, which he claims taken together amount to a deprivation of the right to a fair trial, include: (1) precautionary instruc-

tions given the jury, telling it to consider admissions made by Rush to psychiatrist Spradley only in connection with the issue of Rush's mental competency, were inadequate;[5] (2) two pictures of the murder victim should not have been allowed into evidence; (3) prosecutorial closing remarks were prejudicial; and (4) Rush should have been granted a severance from his co-defendants. Contentions (1) and (4) are fully discussed in the district court opinion, 335 F.Supp. at 437–439, and we find them without merit. Neither the admission of the pictures nor the prosecutor's comments rendered appellant's trial unfair nor denied him due process.

The order of the district court will be affirmed.

4. Appellant also argues that his confession was involuntary because he was given no *Miranda* warning. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), however, was not given retroactive effect. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

5. The issue of defendant's admissions to a psychiatrist here differs from the unconstitutional use of similar admissions in

United States ex rel. Smith v. Yeager, 451 F.2d 164 (3d Cir. 1971), in two important respects: (1) no claim is made in this appeal that there was any error in the trial judge's finding that Rush's admissions to the psychiatrist were made voluntarily; and (2) the jury here was explicitly instructed to consider the admissions only with regard to the issue of defendant's sanity, not as in *Smith* to consider the admissions as proof of defendant's commission of the charged offense.