UNITED STATES of America ex rel. William **HAYWARD**

v.

Robert L. **JOHNSON**, Superintendent.

Civ. A. No. 73–2867.

United States District Court,
E. D. Pennsylvania.
March 18, 1974.

Mark Sendrow, Asst. Dist. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the Court is a petition for a writ of *habeas corpus*. Petitioner is currently serving a six- to twenty-year sentence imposed by Judge James T. McDermott of the Court of Common Pleas of Philadelphia County following a jury trial in which petitioner was found guilty of aggravated robbery and conspiracy. The jury returned a verdict of not guilty on a charge of murder.

In his petition, relator claims entitlement to relief on two grounds. Initially, it is argued that the State Court improperly refused to suppress an oral and written confession that was not the product of relator's rational intellect and free will. Relator further contends that the Commonwealth failed to introduce sufficient independent evidence corroborative of the confession before such confession was admitted into evidence.

Relator, through direct appeal, has sufficiently exhausted his available state remedies so as to merit this Court's consideration of his constitutional claims.

Pursuant to Rule 46 of the Local Rules of Civil Procedure, this *habeas corpus* matter was originally referred to United States Magistrate Edwin E. Maythons. In a report filed on January 28, 1974, Magistrate Naythons concluded that the prosecution introduced sufficient corroborative evidence independent of the confession and held, accordingly, that relator's claims as to the sufficiency of evidence is completely without merit. With respect to the question of the admission in evidence of relator's oral and written statements, Magistrate Naythons recommended that we hold an evidentiary hearing to determine whether relator's confession was in fact a product of his rational intellect and free will, as mandated by Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1968).

The Court has examined in detail Magistrate Naythons' extensive report and the entire transcripts of both the suppression [1] hearing and the trial. We are in complete agreement with the Magistrate's conclusions concerning the sufficiency of evidence introduced to support the admissibility of relator's confession and for this reason we believe that further consideration of this issue is unnecessary. However, the Court is unable to concur with the recommendation that an evidentiary hearing be held to determine the propriety of the State Court's refusal to suppress the relator's oral and written admissions of complicity. For reasons enumerated hereinafter, the petition for a writ of *habeas corpus* will be denied.

The following testimony was adduced at the suppression hearing held before Judge Joseph L. McGlynn of the Philadelphia Common Pleas Court of Philadelphia County:

On September 3, 1970, William Smith was found by a neighbor lying on the bedroom floor of his first-floor apartment located at 14 North 51st Street,

---

[1]. On February 16, 1971, Judge Joseph L. McGlynn of the Philadelphia Common Pleas Court held a pretrial suppression hearing to determine whether the relator's confession was voluntarily and freely made. At the conclusion of the hearing, Judge McGlynn ruled that the confession was voluntarily given and, hence, admissible in evidence.

Philadelphia, Pennsylvania. As the neighbor attempted to assist the obviously injured man, the 71-year-old Smith exclaimed, "Don't hit me no more, Nelson." The neighbor subsequently called the police. When found by the police, the man was bruised and covered with dirt. The victim was then taken to the hospital where he died of an intracerebral hemorrhage and a subdural hemorrhage resulting from external injuries to both sides of the head.

Acting upon information that neighborhood gang members were involved in the beating of William Smith, on September 21, 1970, at 2:30 p. m., Detective Kelly of the Philadelphia Police Department, Homicide Division, went to the home of William Hayward, the petitioner herein. After obtaining the consent of his mother, relator was taken by Detective Kelly to the Police Administration Building for questioning. Relator was placed in a 5' by 7' interrogation room and given his constitutional warnings from a standard police interrogator's card. At this time, relator admitted knowing the victim but otherwise denied any complicity in the robbery or death of the decedent.

Relator was given a lie detector test between 5:30 p. m. and 6:00 p. m. and interviewed again at 8:30 p. m. At the conclusion of the interview, relator began to suffer from the symptoms of narcotics withdrawal and was taken home by the police.

The relator was taken to the Police Administration Building for questioning a second time on September 24, 1970. Relator was placed in the same 5' by 7' room and again received the *Miranda* warnings. This time relator claimed that he wanted to tell the truth. He said that he had observed Len and Nelson Johnson (brothers) beat and take money from the decedent. Complicity in the actual robbery, however, was again denied. Hayward was placed in another room at the conclusion of the second interview while the investigating officers discussed his statements concerning the robbery and beating of Mr. Smith. Relator again began going through withdrawal symptoms and, as before, was immediately taken home by the police. On October 3, 1970, at 12:30 a. m., Hayward was taken into custody for the third time for further questioning. As was the case the previous two times, relator was not placed under arrest. The police officers and the relator arrived at the Police Administration Building at 1:10 a. m. At this point, the relator was alert and responsive. He had no complaints and appeared to understand all that transpired around him. The *Miranda* warnings were administered to him for the third time and at 1:25 a. m. the relator gave an oral statement to the police implicating himself in the crime. Essentially, Hayward stated that around the beginning of September he was walking with Len and Nelson Johnson in the area of 52nd and Market Streets. Relator suggested that the three rob Mr. Smith, who had just been observed walking on 51st Street. He and the Johnson brothers followed the victim. Len Johnson grabbed him from behind while Nelson Johnson went through his pockets and took some money. Nelson pushed Smith against a brick wall and the victim fell down. Relator stated that Len and Nelson then proceeded to kick him about the head. The victim managed to get up and stumble toward his house on 51st Street. The three then purchased three bags of heroin with the money stolen from William Smith. This oral interview ended at 2:40 a. m.

Detective Kelly then took a written statement from the relator from 3:00 a. m. to 4:30 a. m. Before the written statement was taken, the relator was again advised of his constitutional rights. At the conclusion of the statement, the relator first read and then placed his signature on all six pages of the written statement. The relator remained alert and responsive and made no complaints to the police officers.

Relator was formally arrested after the written statement was completed and placed in room 104 of the Police Administration Building. At approximately

12:00 p. m. relator went to the toilet and called his mother. At 12:30 p. m. he went to the toilet again, vomited in the bathroom, and complained of being sick. An emergency patrol wagon was called and relator was transported to Philadelphia General Hospital at 1:00 p. m., where he remained until October 9 with a discharge diagnosis of "heroin withdrawal and enursesis."

Relator alleges that the State Court erred in denying his motion to suppress the contents of the above-described oral and written statements in that such statements, constituting an admission of complicity, were not voluntarily and freely made, but were the product of both physical and mental coercion. In support of this argument, relator argues that the occurrence of narcotics withdrawal symptoms after the confession was given conclusively establishes that the confession was not voluntarily made and not the product of his rational intellect and free will.

At the close of the suppression hearing, the State Court made the following finding:

"I will find as a fact that he [relator] was advised of his constitutional rights; that he understood them; that he freely and voluntarily made the statement, and it was not the result of either physical force or psychological duress; that the fact that he later on suffered withdrawal does not effect the voluntariness of the statement."

Relator was afforded a full and fair evidentiary hearing in the State Court. All essential and material facts were presented and developed during the state suppression hearing. Because the factual issues were fully and fairly developed on the state level, a Federal evidentiary hearing is not required and this Court will presume correct the factual findings of the state proceedings. Townsend v. Sain, *supra* at p. 312, 83 S. Ct. 745, 9 L.Ed.2d 770; United States ex rel. Rush v. Ziegele, 474 F.2d 1356, 1358 (3rd Cir. 1973); United States ex rel. Dickerson v. Rundle, 430 F.2d 462, 464 (3rd Cir. 1970). Having found that the state suppression hearing was adequate in terms of the findings of fact, it is still necessary to determine whether the State Court applied the proper Federal constitutional standards in determining that the confession was voluntary. West v. State of Louisiana, 478 F.2d 1026, 1032 (5th Cir. 1973); United States ex rel. Rush v. Ziegele, *supra*, 474 F.2d at p. 1359.

The evidence presented at the suppression hearing indicated that the relator was advised of his constitutional rights on four separate occasions. The first two times the relator was taken to the Police Administration Building for questioning he was given the *Miranda* warnings by Detective Kelly from the standard police interrogator's card.[2] He was again advised of his basic constitutional rights on October 3, 1970, at the time the oral admissions were made and

2. At the suppression hearing, Detective Kelly testified as follows:

"Q. What if any Constitutional warnings was the defendant given?

"A. I gave him the warnings as they appear on the standard police interrogation card.

"Q. Is this a copy of the card that you used?

"A. That's right.

"Q. What were the warnings exactly that you gave him?

"A. I told Hayward that we were questioning him concerning the death of Mr. William Smith, 71 years of age, lived at No. 14 N. 51st Street, that occurred, death occurred 9/15/70 at about 2:00 p. m.

"Q. Then what did you tell him?

"A. We have a duty to explain to you and to warn you that you have the following legal rights: You have a right to remain silent and do not have to say anything at all; Anything you say can and will be used against you in Court; You have a right to talk to a lawyer of your own choice before we ask you any questions and also to have a lawyer here with you while we ask questions; If you cannot afford to hire a lawyer and you want one, we will see that you have one provided to you free of charge before we ask you any questions; If you are willing to give us a statement, you have a right to stop at any time you wish."

before the formal signed statement was given.

The officers involved testified that the relator was alert and responsive during the time in which the oral and written statements were made. The relator appeared to understand everything that occurred and he answered the questions of the officers clearly. Hayward gave a very detailed comprehensive statement as to the circumstances surrounding the beating and robbery of William Smith. The record of the suppression hearing indicates that relator was in full possession of his mental faculties and that he voluntarily chose to admit his complicity in the robbery.

■ The fact that the relator began to suffer from the symptoms of narcotics withdrawal approximately six hours after the oral statement and four hours after the completion of the formal written statement[3] does not vitiate the voluntariness of the confession. There is no evidence in the record that, at the time the oral and written statements were made, the relator's ability or capacity to understand and to avail himself of the full sweep of the rights included in the warnings were impaired because of the influence of narcotics or the effects of narcotics withdrawal. A careful review of the State Court proceedings, the memoranda submitted by the parties involved, and Magistrate Naythons' report has convinced the Court that relator's statements were voluntary and a product of his rational intellect and free will.

Considerable decisional law exists in support of the Court's determination of voluntariness. In United States ex rel. Sadler v. Commonwealth of Pa., 306 F. Supp. 102 (E.D.Pa.1969), relator admitted his intent to burglarize an apartment. In his *habeas corpus* petition, relator contended that the admission was given involuntarily due to the fact that he was suffering from the effects of drug withdrawal during his interroga-

tion. The court therein found that relator's statement was voluntary, even though the court initially concluded that the relator had experienced preliminary withdrawal symptoms at the time of his interrogation.

The case of United States v. Hollis, 450 F.2d 1207 (5th Cir. 1971), also involved a confession made by a heroin addict while undergoing the symptoms of withdrawal. Conceding that the defendant was in "some discomfort," the court held that Hollis' statements were voluntary. The basis of the court's findings was the agent's testimony that the defendant appeared to be perfectly rational and that he was fully advised of his constitutional rights. See also, United States v. Mattson, 469 F.2d 1234 (9th Cir. 1972).

The above two cases involved admission of guilt made while the accused was undergoing the preliminary effects of narcotics withdrawal. The respective courts, nonetheless, determined the admissions to be voluntary. In the case at bar, the relator did not begin to suffer from the symptoms of withdrawal until a substantial amount of time had elapsed after the confession. The sickness and discomfort experienced by the relator had no effect on the voluntariness of the confession made over four hours previous to the occurrence of such withdrawal symptoms. The relator's confession was voluntary and properly admitted into evidence.

\* \* \* \* \* \*

## ORDER

And now, to wit, this 18th day of March, 1974, after careful and independent consideration of relator's petition for a writ of *habeas corpus*, and after review of the report and recommendation of United States Magistrate Edwin E. Naythons, it is hereby

Ordered that the said petition is denied.

---

3. According to the relator's own testimony, he did not experience any withdrawal symp-

toms until 8:00 a. m. or 9:00 a. m. on October 3, 1970.