Leroy BROWN

v.

Julius T. CUYLER and the Attorney General of the Commonwealth of Pennsylvania.

Civ. A. No. 79–360.

United States District Court, E. D. Pennsylvania.

March 23, 1981.

Ben W. Joseph, Philadelphia, Pa., for petitioner.

Michael F. Henry, Gaele McLaughlin Barthold, Asst. Dist. Attys., Philadelphia, Pa., for respondents.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

In this habeas corpus matter petitioner, Leroy Brown, charges that the state trial court erred in not suppressing his confession because it was obtained involuntarily and in violation of his Miranda[1] rights. Finding that petitioner has exhausted his state court remedies and that his confession was voluntary and not constitutionally defective in any way, the habeas corpus petition is denied.[2]

Following a jury trial, petitioner was convicted of four counts of first degree murder and one count of criminal conspiracy stemming from the execution-style murder of four persons on February 18, 1974 in a house located at 5180 Viola Street in Philadelphia, Pennsylvania. The evidence before the state trial court judge supports the following findings of fact. Petitioner and a co-conspirator had been hired to kill one of the persons present at the Viola Street address. After the murders, petitioner fled Philadelphia and was arrested in Washington, D.C. on March 23, 1974 at approximately 11:15 a. m. The Miranda warnings were read to him and he was searched at the scene of his arrest; the search revealed that petitioner was carrying identification and two medicine bottles bearing his name. Petitioner was transported to the police station, he was handcuffed to a desk and again had read to him his Miranda warnings. His answers to the officers questions demonstrated that petitioner understood his rights. Petitioner stated that he did not want to make a statement without an attorney being present. The interrogating officers then stopped their questioning, left him alone, handcuffed to the desk. About one-half hour later, one of the officers telephoned Philadelphia and learned more of the factual circumstances which gave rise to the arrest warrant. The officer told petitioner about the telephone call to Philadelphia and gave him more details of the crimes. The officer then asked petitioner if he would like to make a statement and petitioner consented. Petitioner was again read his Miranda rights and the officer questioned him as to whether he understood his rights. He acknowledged that he understood his rights and stated that he wanted to make a statement. Thereafter, two statements were taken from petitioner.

The first statement began about 12:30 p. m. and it took two hours to complete. Dur-

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. This case was referred to a magistrate who recommended that this petition for a writ of habeas corpus be dismissed without an evidentiary hearing on the grounds that petitioner had not exhausted his state court remedies as to his claim that his post-arrest statements were involuntary and that his other arguments be denied as they were without merit. I ordered that the magistrate's report and recommendations be filed and deferred action on the petition pending possible objections thereto. See infra.

ing the statement petitioner said that he only had a seventh grade education and that he "could only read a little." At one point petitioner stated that while he was still in Philadelphia about a week and a half after the murders he was shot in the back by his co-felon. Petitioner asserted that the bullet was still lodged in his body. An officer examined his back where he was supposed to have been shot, there was no bandage and the wound appeared to be healed. Petitioner told the officers that he was not in pain and that he did not want medical attention. When the statement was completed one of the officers read it back to petitioner who took it, appeared to read it and signed it.

Approximately two or three hours after the first statement was signed, two detectives from the Philadelphia Police Department's Homicide Squad arrived at the Washington, D.C. police station. After reviewing petitioner's statement, the detectives saw petitioner at about 4:50 p. m. and advised him of his *Miranda* rights. The detectives asked him questions designed to test whether he understood his rights. On a card which contained the questions, petitioner wrote "yes" or "no" after each question and thereby indicated that he understood his rights. Petitioner informed the officers that he was not a heroin addict, but that he "popped pills" and that he was in a methadone program. He also said he would be needing methadone medication soon. In response to the officers' questions, petitioner stated that the medicine which was taken from him when he was arrested was for "aching bones." Petitioner began his second statement at about 5:05 p. m. and completed it about an hour later. He was not handcuffed at anytime during the taking of the second statement. Petitioner said that he could read a little and the officer handed the statement to him to review. He appeared not to be reading it so it was read to him and he then signed it.

In a pretrial motion to suppress, appellant argued that statements he made after he was arrested should not be admitted at trial because they were made involuntarily and in violation of his *Miranda* rights. Af-

ter a lengthy and thorough suppression hearing, the judge denied the motion stating on the record her findings of fact and conclusions of law. She concluded that petitioner had knowingly and intelligently waived his right to counsel prior to the police interrogation and that under the totality of the circumstances the statements were voluntary. In making her finding the judge considered petitioner's claim that at the time of questioning he was in pain because of the alleged gunshot wound and rejected it.

At trial petitioner's statements were accepted in evidence and he was convicted of the charges. Post conviction motions were heard and denied by a three judge court *en banc*. On direct appeal to the Supreme Court of Pennsylvania petitioner argued, *inter alia*, that the statements made at the time of his arrest were obtained involuntarily and should have been suppressed. The court rejected all of the arguments, specifically finding without merit the claim of erroneous admission into evidence of statements allegedly made involuntarily, and affirmed the judgment. *Commonwealth v. Brown*, 482 Pa. 256, 393 A.2d 650 (1978) (per curiam).

Thereafter, petitioner filed this habeas corpus petition *in forma pauperis*. Petitioner asserted his entitlement to the writ on the grounds that:

(1) his confession was unlawful because at the time the statement was given, he was suffering from gunshot wounds and the police refused to take him to the hospital until he had given a statement against his will,

(2) the trial court erred in finding that petitioner was competent to stand trial because on the third day of trial he was unable to understand the proceedings,

(3) the court erred in not ordering a sanity hearing when it was established by the testimony of doctors that appellant was unable to understand the proceedings,

(4) petitioner received ineffective assistance of counsel in that his counsel failed to request that he be committed to a hospital pursuant to 50 P.S. 4408,

(5) petitioner received ineffective assistance of counsel in that trial counsel failed to object to a jury instruction which provided that petitioner was sane at the time the crime was committed,

(6) trial counsel was ineffective because he failed to establish an insanity defense,

(7) trial counsel was ineffective because he failed to present evidence showing that petitioner was intoxicated on the day of the crime and

(8) counsel was ineffective on the post-verdict motions.

I referred the matter to a magistrate for a report and recommendation. The magistrate's report and recommendations were filed pursuant to 28 U.S.C. § 636. The report recommended that petitioner's application for a writ be dismissed for failure to exhaust state remedies as to the involuntariness of his statements and denied as to all the other claims.

To afford petitioner a meaningful opportunity to serve and file written objections to the proposed findings and recommendations of the magistrate, I appointed counsel to represent him. Thereafter, counsel filed objections to the magistrate's report on the grounds that:

1. As to claim I, on the grounds that Relator's confession was involuntary and that such grounds were adequately presented to the state trial and all appellate courts. Relator further objects to the finding that he has not exhausted his state remedies. In the alternative, relator was denied the effective assistance of counsel during police questioning inasmuch as he did not knowingly and voluntarily waive his right to counsel during such interrogation.

2. As to findings II through XVIII, relator objects on the grounds that the findings are erroneous as a matter of law.[3]

An opportunity for an evidentiary hearing and for oral argument on the objections was provided. At the hearing petitioner's counsel withdrew the objections to findings II through XVIII and declined the opportunity to present evidence on the remaining claim of involuntariness of the statements; instead, counsel chose to rely on the briefs and on oral argument.

In regard to the exhaustion of state remedies problem, counsel entered into the following stipulation.

AND NOW, this 24th day of September, 1980, it is hereby agreed by and between the undersigned, pursuant to the Rules governing § 2254 cases, that Ground One of Plaintiff/Relator's Habeas Corpus Petition is hereby amended to challenge the voluntariess [sic] of his statements under the totality of the circumstances, as raised in the State Court System.

I.

The scope of review of a federal court in a petition for a writ of habeas corpus is carefully defined in 28 U.S.C. § 2254(d) with respect to relief from a state court conviction. Where the state court has held a hearing and made factual findings Section 2254(d) provides that a federal court must apply a "presumption of correctness" to the findings unless it is established that one of the statutory exceptions is present.[4] If none of the eight enumerated

3. Counsel then withdrew from this case noting that previous commitments made it impossible for him to adequately represent petitioner. Subsequently, I appointed substitute counsel who filed a brief on behalf of petitioner in support of his application for a writ of habeas corpus.

4. None of the exceptions set out below are present in this case. Section 2254(d) provides that a presumption of correctness adheres to all findings of fact made by a state court unless it is shown that:

(1) the merits of the factual dispute were not resolved in the State court hearing;

(2) the fact finding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) the material facts were not adequately developed at the State court hearing;

(4) the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;

(5) the applicant was an indigent and the State court, in deprivation of his constitution-

exceptions exists, then petitioner must show by "convincing evidence" that the state court's factual findings are erroneous. *Sumner v. Mata,* —— U.S. ——, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981); *see Schmidt v. Hewitt,* 573 F.2d 794, 799 (3d Cir. 1978). However, the voluntariness of a confession must be viewed as a mixed question of fact and law, *United States ex rel. Rush v. Ziegele,* 474 F.2d 1356, 1358 (3d Cir. 1978), which "requires the application of legal principles to the historical facts of this case." *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (citations omitted). Therefore, a federal habeas court must determine not only whether the petitioner has presented convincing evidence that the state court's determination is not adequately supported by the record, but it must also consider whether the correct federal constitutional standards have been applied. *See United States ex rel. Rush v. Ziegele, supra.*

## II.

In summary the petitioner argues that his statements should not have been admitted into evidence at trial because (1) the police deprived him of the safeguards afforded by the *Miranda* warnings when they did not give him counsel immediately upon his request and (2) under the totality of the circumstances his statements were not the product of a rational mind and a free will. I will examine each of these arguments separately.

## A.

Petitioner contends that his fifth and fourteenth amendment rights to have counsel present at his police custodial interrogation were violated when he "refused to answer questions without an attorney and was then left alone in a room handcuffed to a desk for an hour. The police returned and told him they had some information concerning the matter. He then was given warnings again and the confessions were elicited from him." Petitioner's Brief in Support of Writ of Habeas Corpus at 9. The suppression hearing judge made the following findings of fact pertinent to this issue.

14. After defendant arrived at police headquarters he was placed in an interview room and was handcuffed to a desk. He was advised of his Miranda rights and was read eight questions concerning his understanding of those rights. The medicine was taken from him but was kept in the room until it was turned over to the booking people.

15. In answering the Miranda questions defendant indicated he did not wish to make a statement without the presence of a lawyer. No questions were asked of him at that time and no statement was taken.

16. About 30 minutes later Detective Chaney telephoned Philadelphia Homicide Division and learned more details of the crime.

17. Detective Chaney returned to the defendant, told him that he had more information about the crimes, some of which he related to the defendant. He asked him again if he wished to make a statement. This time the defendant consented.

18. Detective Chaney again gave the defendant the Miranda warnings and read the Miranda questions. He received answers which indicated the defendant wished to give a voluntary statement.

19. No threats or promises were made to the defendant. He was not struck.

al right, failed to appoint counsel to represent him in the State court proceeding;

(6) the applicant did not receive a full, fair and adequate hearing in the State court proceeding; or

(7) the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determi-nation of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record....

At the outset I must presume that these findings of fact are correct as is required by 28 U.S.C. § 2254(d). In *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627–28, 16 L.Ed.2d 694 (1966) the Supreme Court held that once the accused

> indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. [A]ny statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise.... If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Id.*, 384 U.S. at 475, 86 S.Ct. at 1628 (citations omitted).

Courts closely scrutinize the record upon an assertion of a waiver of a constitutional right. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). It is the government's burden to establish by a preponderance of the evidence that petitioner has waived his right to counsel. *See U. S. v. Gardner*, 516 F.2d 334, 341 (7th Cir. 1975), *cert. denied* 423 U.S. 861, 96 S.Ct. 118, 46 L.Ed.2d 89; *U. S. ex rel. Graham v. Mancusi*, 457 F.2d 463 (2d Cir. 1972). Notably, petitioner does not argue that the police failed to comply with the technical requirements of *Miranda* for clearly the record discloses that the officers read the rights to petitioner at every point before questioning began. The question is then whether petitioner may waive his privilege against self-incrimination and his right to retained or appointed counsel once he has asserted it?

It is undisputed that prior to his first statement petitioner stated that he wanted counsel and the police officers immediately stopped their questioning in conformity with *Miranda*. In *Michigan v. Mosley*, 423 U.S. 96, 102–103, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975), the Supreme Court held

that the *Miranda* decision can not be read "to create a per se proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent," particularly where the accused's "right to cut off questioning had been scrupulously honored." *Id.*, 423 U.S. at 96, 96 S.Ct. at 321.

In *United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976), the Ninth Circuit, in a case factually similar to the instant case, upheld· the admissibility of a defendant's incriminating statements where after the accused had been given his *Miranda* warnings at the scene of the arrest, he immediately asserted his right to counsel and while being transported to the county jail the accused decided to make a statement after one of the arresting F.B.I. agents recited to him the evidence against him. Relying on *Michigan v. Mosley*, the court held that "a waiver of rights under Miranda can occur despite an earlier demand to have an attorney." *Id.*, at 367–68.[5]

■ Petitioner does not question the accuracy of the facts found by the state court judge as to whether he was advised of his *Miranda* rights; rather, he challenges only the legal sufficiency of the procedures followed by the police after he had asserted his right to counsel. The record clearly shows that he changed his mind about wanting counsel present and that after he had been fully advised of his *Miranda* rights petitioner made two statements without counsel being present. Under the circumstances petitioner cannot complain that his *Miranda* rights have been violated. *Michigan v. Mosley, supra; U. S. v. Pheaster, supra.*

■ Petitioner has not rebutted the presumption of correctness of the suppression hearing judge's factual findings with convincing evidence as required by 28 U.S.C. § 2254(d). I further find that after a careful review of the record the government

---

**5.** In reaching its conclusion in *United States v. Pheaster, supra,* the Ninth Circuit also relied on the Fifth Circuit case of *United States v.* *Hodge,* 487 F.2d 945 (5th Cir. 1973) which presented very similar facts to those in *Pheaster, supra.*

sustained its burden of showing by a preponderance of the evidence that petitioner voluntarily waived his fifth and fourteenth amendment privilege against self-incrimination and his right to have counsel present at his custodial interrogation in accordance with the *Miranda* requirements.

### B.

■ Petitioner next argues that even if the *Miranda* principle applies here under the totality of the circumstances his statements were not voluntary. He directs the court's attention to his low intelligence level, his minimal reading ability, the allegedly physically coercive conditions of his interrogation. Also, he contends

> ... he was suffering from a bullet wound and asked to have medical treatment to remove the bullet from his buttocks. [He] had a medical history of a convulsive disorder.... He had also become dependent on methadone and told the police he would need another methadone soon. He was suffering with withdrawal at the time of his interrogation. [H]e was suffering from schizophrenic illness of a paranoid type as manifested by a history of auditory and visual hallucinations....

Petitioner's Brief in Support of Writ of Habeas Corpus at 8.

The judge at the suppression hearing made sixty findings of fact, most of them adverse to petitioner's contention. The factual findings included, in addition to 14–19, *supra*, the following concerning the interrogation.

20. The defendant appeared physically fit and mentally alert. He was responsive. He did not appear to be in need of medication. He was not perspiring and his pupils were not dilated.

29. The defendant was alert and responsive. He told the detectives he was not a heroin addict but that he popped pills. He said he was on the methadone program and that he would be needing some soon.

30. The defendant did not appear to be suffering from the effects of any withdrawal.

38. The x-rays, [taken upon his return to Philadelphia], failed to reveal a bullet anywhere in the defendant's body.

44. In April, 1974, the defendant had a verbal I.Q. of 73, a performance I.Q. of 86 and a full scale I.Q. of 77, which Dr. Guy said was borderline intelligence. He said the test indicated the defendant might have greater potential.

59. Even though the defendant is a paranoid schizophrenic who from time to time is in remission, there is no evidence that on March 23rd, when the statements were given that his condition prevented him in any way from understanding the significance of the statements he made to Detective Chaney of the Washington Metropolitan Police Department or to the Philadelphia police upon their arrival. On the contrary, the evidence is that he appeared normal.

60. The defendant does not rate high on the scale of credibility.

From these findings of fact the judge concluded:

> From the totality of the circumstances, the defendant's age, his borderline intelligence level with higher potential, his paranoid schizophrenic condition which from time to time is in remission and from the absence of any evidence of a panic situation or psychotic state on March 23rd, from the defendant's junior high school level schooling, from his ability to work a double shift albeit dishwashing, his ability to travel, his facility with the use and understanding of the English language, the lack of mistreatment or trickery of the police, the defendant's prior experience with the judicial system and his lack of credibility it is patently clear that the Commonwealth has proved by a preponderance of the credible evidence that the statements were the products of an essen-

tially free and unconstrained choice of the maker, that the defendant's will was not overborne and his capacity for self-determination was not critically impaired.

Again, I must apply the statutorily mandated presumption of correctness to the trial judge's findings of fact and it is the petitioner's burden to show by convincing evidence that these findings are erroneous. 28 U.S.C. § 2254(d). After careful review of the record, I find that the state court's findings of fact are adequately supported by evidence presented at the suppression hearing.

Further, petitioner availed himself of the opportunity to testify at the suppression hearing but he failed to develop any of the material facts to support his motion. He testified that he could not remember anything about his arrest or detention in Washington, D.C. He stated that he could only remember a brief conversation with a police officer while being driven back to Philadelphia. Petitioner's testimony did not provide the judge with any information as to the involuntariness of his confession. His testimony was substantively as if he had not testified at all. "Inexcusable neglect of a defendant to present evidence crucial to his constitutional claims precludes defendant from having the right to a second opportunity, such as a habeas corpus hearing, to set forth evidence supporting his allegations." *United States ex rel. Rush v. Ziegele, supra,* at 1359 (citations omitted). The trial court made a specific finding that petitioner was not a credible witness which is amply supported by the record. There is no evidence that he was threatened or abused before making the statements. Taken on the record as a whole it is clear that from the totality of the circumstances petitioner's statements were voluntary. In *Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961), the Supreme Court articulated the test for voluntariness as whether the confession is "the product of an essentially free and unconstrained choice by its maker." *See also Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). The judge at the suppression hearing correctly applied this standard in finding that petitioner's statements were voluntary.

### III.

In conclusion, for the reasons stated above I find that petitioner received his *Miranda* warnings before each interrogation began and that he was not denied his fifth and fourteenth amendment rights to counsel during his police custodial interrogations. *Miranda v. Arizona, supra; Michigan v. Mosley, supra.* Further, I find that petitioner has failed to meet his burden of rebutting with convincing evidence the presumption of correctness of the state trial court's findings of fact. 28 U.S.C. § 2254(d). Finally, it is clear the state court judge applied the correct standard in concluding that petitioner's two statements were given voluntarily to the police. Therefore, I hold that the petition for a writ of habeas corpus is denied.