**UNITED STATES of America**

v.

**Ezekiel M. KINSEY and Susie Woodson.**

**Crim. No. 72–391.**

United States District Court,
E. D. Pennsylvania.

Dec. 18, 1972.

---

C. Oliver Burt, III, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Robert Scandone, Asst. Public Defender, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

DITTER, District Judge.

This case comes before the Court on a motion to suppress a statement given during custodial interrogation. The question is whether *Miranda*[1] rights were violated when a federal officer questioned defendant after he had refused to talk with local police.

At approximately 10:50 A.M., January 27, 1972, the Philadelphia police radio transmitted a call that the mail storage box located at Pamona and Cherokee Streets was being broken into. The radio message gave a description of the man and woman who were committing the offense. Two policemen, Wallace Drew, and his partner, Officer Eberhard, were in a vehicle nearby. They criss-crossed the general vicinity and while doing so heard a second message that the complainant had reiterated her earlier description. In addition, she stated the suspects took a mailbag from the box and placed it in a green trash can liner. This call also contained information that

an officer had verified the fact that the box had been broken into.

Several minutes later Officers Drew and Eberhard observed a man and a woman walking down the street approximately a block and a half from where the mailbox was located. No other pedestrians were on the street, and the man and woman fitted the descriptions which the officers had previously received.

They pulled up next to the suspects and informed them that they were under arrest. Both were frisked. As Officer Drew was preparing to place the woman, now known to be Susie Woodson, into the police vehicle, he observed approximately one inch of a gray manila envelope protruding from her coat pocket. He testified that he recognized this envelope as being of the type that normally was used to mail a check. He removed the envelope from her pocket and found it to contain five welfare checks drawn by the Commonwealth of Pennsylvania. Officer Drew testified that the arrest was completed at approximately 11:22 A.M.

Officers Drew and Eberhard then took Mrs. Woodson and the other suspect, now known to be Ezekiel Kinsey, to Northwest District Division headquarters. They arrived at approximately noon. The suspects were placed in separate interrogation rooms. At approximately 2:30 P.M., Detective James O'Neill entered Kinsey's room and advised him of his constitutional rights pursuant to a printed warning and waiver form. Kinsey indicated that he understood his rights and that he did not desire to speak to Detective O'Neill.

Approximately one-half hour later, United States Postal Inspector Ryland L. Saxby reached the Northwest Division headquarters. After speaking with Detective O'Neill and Officers Drew and Eberhard, Inspector Saxby entered Kinsey's interrogation room at approximately 3:45 P.M. He too advised Kinsey of his constitutional rights as listed on a warning and waiver form prepared by

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

the Post Office. After Kinsey read the form, he said he would waive his rights and talk, but he refused to sign the form itself. Thereafter, Kinsey told Inspector Saxby that the mail from the box had been in his possession but that he had burned it. The Inspector then left Kinsey and talked with Mrs. Woodson and with Detective O'Neill. He returned to Kinsey who then said that he had not burned the mail but it was in the basement of an abandoned house at 117 W. Sharpnack Street. He also told Inspector Saxby that he and Mrs. Woodson had broken into the box, taken out the welfare checks, and planned to cash them. When the five checks found in Mrs. Woodson's pocket were shown to him by Inspector Saxby, Kinsey admitted that they were the ones removed from the box. Kinsey also explained that he had been unwilling to speak with Detective O'Neill because on a previous occasion he had been mistreated by officers from the Northwest Detective Division during questioning about a stolen automobile.

A search warrant was obtained for 117 W. Sharpnack Street. Mail from the entered storage box, mail straps, other mail, and several green plastic trash can liners were found in the basement. This building, 117 W. Sharpnack Street, is approximately one to two blocks away from the location of the storage box in question.

The present motion to suppress was brought by Kinsey. It raises two issues: the legality of the arrest and the seizure of the welfare checks, and secondly, whether Kinsey waived his right to have counsel present during his interrogation by Inspector Saxby.

In his brief, Kinsey's counsel deals only with the question of the statement made to Inspector Saxby, thus conceding the validity of the arrest and seizure. Under the circumstances, there could be little question that Officers Drew and Eberhard had reasonable cause to arrest Kinsey and Mrs. Woodson. They had been observed, their descriptions noted, and they were arrested shortly afterward near the scene of the crime. The envelope containing the checks was in plain view and its seizure was incident to a lawful arrest.

So far as Kinsey's admissions are concerned, counsel argues that *Miranda* was violated by Inspector Saxby's questions after defendant had declined to give any statement to Detective O'Neill. *Miranda* holds, of course, that questioning must stop at any time the defendant decides that he does not wish to proceed without the assistance of an attorney.

■ There is no requirement that the *Miranda* warnings be repeated immediately prior to the commencement of every interrogation session. They do not become "stale": Commonwealth v. Abrams, 443 Pa. 295, 298–301, 278 A.2d 902 (1971). Here, Inspector Saxby did repeat the instructions required by the *Miranda* case. Although Kinsey refused to sign an acknowledgment that he had received the appropriate warnings, I find that Inspector Saxby's testimony is credible and I therefore conclude that Kinsey waived his rights to have counsel present during interrogation.

■ Kinsey's statement to Inspector Saxby is not rendered invalid by his earlier refusal to answer Detective O'Neill's questions: United States v. Grady, 423 F.2d 1091, 1093 (5th Cir. 1970); Jennings v. United States, 391 F.2d 512, 515–516 (5th Cir. 1968); Miller v. United States, 396 F.2d 492, 496 (8th Cir. 1968); Maguire v. United States, 396 F.2d 327, 331 (9th Cir. 1968), cert. denied 393 U.S. 1099, 89 S.Ct. 897, 21 L. Ed.2d 792 (1969); McIntyre v. State of New York, 329 F.Supp. 9, 14 (E.D.N.Y. 1971).