Leroy BROWN, Appellant,

v.

Julius T. CUYLER, Supt., At S.C.I.G., Appellee.

No. 81–1968.

United States Court of Appeals, Third Circuit.

Argued Jan. 18, 1982.
Decided Jan. 29, 1982.

---

Ben W. Joseph, Joseph, Berkman & Joseph, Philadelphia, Pa., for appellant.

Gaele McLaughlin Barthold, Asst. Chief, Appeals Division, Mark S. Gurevitz, Jane Cutler Greenspan, Asst. Dist. Attys., Eric B. Henson, Deputy Dist. Atty. for Law, Edward G. Rendell, Dist. Atty., Philadelphia, Pa., for appellee.

Before SEITZ, Chief Judge, and ALDISERT and ROSENN, Circuit Judges.

## OPINION OF THE COURT

PER CURIAM:

Leroy Brown appeals from the district court's order, 510 F.Supp. 171, denying his petition for a writ of habeas corpus. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

### I.

Leroy Brown was arrested in Washington, D. C. on March 23, 1974. The arresting officer, who knew only that Brown was wanted in Philadelphia on murder charges, immediately read Brown the *Miranda* warnings. Brown was transported to a police station where he was handcuffed to a desk and again given *Miranda* warnings. Brown said that he did not want to make a statement without an attorney, and the officers ceased questioning.

The Washington police then contacted Philadelphia authorities and learned that Brown had been charged with committing four execution-style murders in Philadelphia a month before. One officer told Brown about this call to Philadelphia and informed him of the details of the charges lodged against him. Brown was again read the *Miranda* warnings, and after acknowledging that he understood them, said he desired to make a statement. Shortly thereafter, Brown made two lengthy inculpatory statements.

Brown filed a pretrial petition to suppress these statements in the Philadelphia Court of Common Pleas on the ground that he lacked the necessary intellect and sanity to have waived his *Miranda* rights and that he had made the statements "against his will and involuntarily because of coercive tactics of the police." The trial court denied his suppression motion, the statements were admitted, and Brown was convicted of four counts of first degree murder and one count of conspiracy.

Brown appealed his conviction to the Pennsylvania Supreme Court, alleging, *inter alia*: "It was Error not to suppress appellant's statements where appellant's mental condition at the time of their mak-

ing was that of a chronic paranoid schizophrenic with an IQ within the mild defective range and where the circumstances rendered appellant's statements involuntary." Brown did not argue in this brief that the resumption of police questioning after he had invoked his right to counsel was improper.

The Pennsylvania Supreme Court affirmed Brown's conviction. *Commonwealth v. Brown*, 482 Pa. 256, 393 A.2d 650 (1978) (per curiam). The majority held that all of Brown's challenges to his conviction were "without merit", including his allegation "[t]hat the trial court erred in not suppressing two allegedly involuntary statements which appellant made following his arrest." 482 Pa. at 258, 393 A.2d at 651. Three justices dissented on the ground that the resumption of questioning after Brown's assertion of his right to counsel was constitutionally impermissible. *See Commonwealth v. Mercier*, 451 Pa. 211, 216, 302 A.2d 337, 340 (1973) ("For a waiver to be effective, the reversal of the defendant's position must have been initiated by him.").

Brown then filed the instant petition for habeas corpus in federal district court, alleging that: 1) "In the totality of the circumstances, the statements of the relator were not the product of a rational mind and a free will"; and 2) "The confession was obtained in violation of the safeguards mandated by *Miranda* and was, therefore, inadmissible." After finding that Brown had exhausted his state remedies as required by 28 U.S.C. § 2254 (1976), the district court rejected these challenges to the admission of his statements. The court held that Brown had effectively waived his *Miranda* rights and concluded that Brown's statements had been voluntarily given. After the district court issued its opinion, the United States Supreme Court decided *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), in which it considered the issue of waiver after an accused has asserted his fifth amendment rights.

On this appeal, Brown raises only one issue: he alleges that his waiver of his *Miranda* rights was invalid because the police improperly resumed questioning after he had invoked his right to counsel. *See Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); *Commonwealth v. Mercier*, 451 Pa. 211, 302 A.2d 337 (1973). The government contends that since Brown did not raise this issue in the state court, his petition must be dismissed for failure to exhaust state remedies.[1]

## II.

The statutory exhaustion requirement provides that a federal court shall not grant a state prisoner's petition for habeas corpus "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254 (1976). The requirement is not jurisdictional, but is rooted in the policy of federal-state comity. *See, e.g. United States ex rel. Speaks v. Brierley*, 417 F.2d 597, 600 (3d Cir. 1969), *cert. denied*, 397 U.S. 1051, 90 S.Ct. 1388, 25 L.Ed.2d 665 (1970). It represents "an accommodation of our federal system designed to give the State the initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Wilwording v. Swenson*, 404 U.S. 249, 250, 92 S.Ct. 407, 408, 30 L.Ed.2d 418 (1971) (per curiam) (quoting *Fay v. Noia*, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963)).

In *Picard v. Connor*, 404 U.S. 270, 275–76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), the United States Supreme Court emphasized that "it is not sufficient merely that the federal habeas applicant has been through the state courts." *Id.* at 275, 92 S.Ct. at 512. Rather, the "federal claim must be fairly presented" to the state tribunal. In *Zicarelli v. Gray*, 543 F.2d 466 (3d Cir. 1976) (in banc), we stated: "[T]he argument brought before the federal court must be the 'substantial equivalent' of a claim al-

1. In addressing the exhaustion requirement, it is not clear that the district court considered the issue now before us.

ready presented to the state courts; 'the substance of' the claim raised in the federal court must first have been submitted to the state court." *Id.* at 472 (quoting *Picard,* 404 U.S. at 277–78, 92 S.Ct. at 513). Moreover, it is not enough that the petitioner presents to the state court the facts upon which a federal claim is based. *See Picard,* 404 U.S. at 277, 92 S.Ct. at 513; *Paullett v. Howard,* 634 F.2d 117, 119 (3d Cir. 1980) (per curiam).

■ A federal habeas corpus petitioner has the burden of proving all facts entitling him to a discharge from custody. *See, e.g., Goins v. Brierley,* 464 F.2d 947, 949 (3d Cir. 1972). Although this burden is applicable to the substantive elements of a petitioner's claim, we see no reason why he should not bear the burden of demonstrating that he has met the procedural requisites that entitle him to relief as well. Such a rule would comport with the presumption applied in other circuits that, "[w]hen a federal court is unable to determine unequivocably that an issue has been considered and ruled upon by the state courts, comity requires that the initial determination be made by the state courts." *Tyler v. Swenson,* 527 F.2d 877, 880 (8th Cir.), *cert. denied,* 425 U.S. 915, 96 S.Ct. 1515, 47 L.Ed.2d 766 (1976). *See Echevarria v. Bell,* 579 F.2d 1022, 1025 (7th Cir. 1978); *Durkin v. Davis,* 538 F.2d 1037, 1041–42 (4th Cir. 1976) ("doubts as to whether the issue has been so presented should be resolved against exhaustion"); *Williams v. Wainwright,* 410 F.2d 144, 145 (5th Cir. 1969), *cert. denied,* 398 U.S. 943, 90 S.Ct. 1846, 26 L.Ed.2d 281 (1970); *Ray v. Howard,* 486 F.Supp. 638, 642 (E.D.Pa.1980). *See also United States ex rel. Trantino v. Hatrack,* 563 F.2d 86, 95 (3d Cir. 1977), *cert. denied,* 435 U.S. 928, 98 S.Ct. 1499, 55 L.Ed.2d 524 (1978) (emphasizing "necessity for strict adherence to the exhaustion requirement").

### A.

■ A habeas petitioner may, of course, satisfy the exhaustion requirement by demonstrating that a state court has expressly decided the issues he raises in his habeas petition. In order to meet this burden, it must be evident from the state court's opinion alone that it has considered an issue. Only when the state court is silent on an issue subsequently raised in a habeas petition must the federal court conduct a further inquiry to ascertain whether the exhaustion requirement has been satisfied.

In this case, the majority's per curiam opinion in *Commonwealth v. Brown* does not indicate in detail the issues it considered in rejecting Brown's challenge to the admission of the inculpatory statements. The opinion merely states that Brown's allegation "[t]hat the trial court erred in not suppressing two involuntary statements which appellant made following his arrest" was "without merit." *Brown,* 482 Pa. at 258, 393 A.2d at 651. We do not believe that this statement demonstrates that the court considered the validity of Brown's waiver of his fifth amendment rights. Nor are we willing to infer from the dissenting opinion in *Brown,* which expressly relied on the waiver issue, that the majority actually considered the issue. It is unclear whether the majority failed to address the issue because it rejected the waiver argument or because a procedural rule barred consideration of the claim. For example, the majority may have refused to consider the waiver issue because Brown failed to raise the issue on appeal. *See* Pennsylvania Rule of Appellate Procedure 2116 ("ordinarily no point will be considered which is not set forth in the statement of questions or suggested thereby"). Thus, because petitioner has not demonstrated that the opinion alone indicates that the Pennsylvania Supreme Court actually considered the waiver issue, we proceed to consider Brown's contention that he "fairly presented" the issue to the state court.

### B.

In determining whether a petitioner has fairly presented an issue to the state courts, we examine the pretrial, trial and appellate briefs submitted to the state court. *See Picard,* 404 U.S. at 273–74, 92 S.Ct. at 511. Brown's pretrial petition to suppress the

oral and written statements focused on the voluntariness of those statements in light of his limited mental and psychological abilities. For example, he charged that at the time he was questioned by police, he "was mentally ill, mentally defective, [an] ill-educated person, incompetent to comprehend the nature, meaning and significance of his constitutional rights and incompetent to intelligently waive those rights." He also contended that "[t]he statements extracted from the defendant were given by him against his will and involuntarily because of coercive tactics of the police under the conditions of the defendant[']s mental illness and the other surrounding circumstances of his interrogation." The petition does not allege that the resumption of questioning after Brown asserted his *Miranda* rights violated his fifth amendment privilege against self-incrimination.

Similarly, in Brown's post-verdict brief to the trial court, he alleged that "[t]he Commonwealth should have proved that the defendant Leroy Brown was in fact competent to give the statements in question. It is submitted that the Commonwealth failed in this element of proof." Finally, Brown's brief before the Pennsylvania Supreme Court challenged the admission of the statements only on the ground that they were made involuntarily as a result of coercive police tactics:

> The totality of the circumstances were such as to render Appellant's statement involuntary where he was handcuffed to a desk and left alone in an interview room by the police before and during the taking of a statement; where he was handcuffed to a desk, warned of his *Miranda* rights, refused to answer questions without the assistance of an attorney and was then requestioned one hour later without providing counsel and where he had an I.Q. in the mild defective range and he was diagnosed as a paranoid schizophrenic taking methadone.

The Commonwealth's understanding of Brown's argument, as reflected in its brief before the state court, may also shed light on whether petitioner has exhausted his state remedies. *See Twitty v. Smith*, 614 F.2d 325, 332 (2d Cir. 1979). The Commonwealth's brief before the state supreme court notes that Brown did "not contend that there was any bar to the resumption of questioning under the circumstances; neither does he specifically argue that the Commonwealth's evidence was legally insufficient to establish that defendant's subsequent determination to waive his rights was knowing, intelligent, and voluntary." The Commonwealth concluded that Brown argued only that the resumption of questioning "constituted coercive tactics under the totality of the circumstances test" so as to render his statements involuntary.

Thus, a fair reading of petitioner's briefs to the state court indicates that his argument was based on the alleged involuntariness of his confession. To support this contention, he relied primarily on a theory of psychological coercion based on his psychiatric history, drug dependence, and low I.Q.

Nonetheless, Brown contends that his voluntariness argument encompasses not only his claim of coercion but also the waiver issue. Although there is conceptual overlap between a claim that, under the totality of the circumstances, a confession was involuntarily made, and a claim that a confession was the product of an invalid waiver of the privilege against self-incrimination, we believe that the issues are distinct. *See Edwards v. Arizona*, 451 U.S. at 484, 101 S.Ct. at 1884 ("the voluntariness of a consent or an admission on the one hand, and a knowing and intelligent waiver on the other, are discrete inquiries").

An examination of the cases cited by Brown in his state court briefs to support his voluntariness argument highlights this distinction. All but one of the United States Supreme Court decisions cited by Brown were decided before 1966, when the Court held in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the fifth amendment privilege against self-incrimination governs the admissibility of inculpatory statements. They therefore could not possibly support the argument petitioner raises here. In each of these

cases, the Court considered whether, under the totality of the circumstances, a "confession [is] the product of an essentially free and unconstrained choice by its maker.... If it is not, if his will has been overborne, and his capacity for self determination critically impaired, the use of his confession offends due process." *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961). *See Lynumn v. Illinois*, 372 U.S. 528, 534, 83 S.Ct. 917, 920, 9 L.Ed.2d 922 (1963) ("the question in each case is whether the defendant's will was overborne at the time he confessed"); *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960). Even the sole post-*Miranda* case cited in Brown's state court brief involved a challenge to the state court's ruling that a statement had been made involuntarily in violation of the due process clause. *See Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972).

Similarly, the state court decisions relied on by the petitioner in his brief to the Pennsylvania Supreme Court primarily involve the issue of voluntariness. *See Commonwealth v. Ritter*, 462 Pa. 202, 340 A.2d 433 (1975) ("Appellant argues that his confession should have been suppressed as not being voluntary because of his mental and physical condition at the time it was given."); *Commonwealth v. Boyd*, 461 Pa. 17, 334 A.2d 610 (1975) (considering voluntariness of confession under totality of circumstances); *Commonwealth v. Simms*, 455 Pa. 599, 317 A.2d 265 (1974) (same); *Commonwealth v. Cannon*, 453 Pa. 389, 309 A.2d 384 (1973) (same). In *Commonwealth v. Kichline*, 468 Pa. 265, 361 A.2d 282 (1976), also cited by petitioner, the Pennsylvania Supreme Court considered the question whether the defendant's waiver of the privilege against self-incrimination was "knowing and intelligent". However, the court also considered a challenge to the voluntariness of the statement.

The waiver argument Brown raises in federal court is derived from a distinct line of cases. First, the decisions cited by petitioner in his state court brief are grounded on a different constitutional right: the due process clause of the fourteenth amendment. *See, e.g., Lynumn v. Illinois*, 372 U.S. 528, 537, 83 S.Ct. 917, 922, 9 L.Ed.2d 922 (1963). In his habeas petition, Brown argues that his confession was obtained in violation of his fifth amendment privilege against self-incrimination.

Second, "the proper standard to be applied in determining the question of waiver [is] that it [is] incumbent upon the state to prove 'an intentional relinquishment or abandonment of a known right or privilege.'" *Brewer v. Williams*, 430 U.S. 387, 405, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)). Brown mentions this waiver standard in a passing reference in his brief before the Pennsylvania Supreme Court: "the Commonwealth failed to establish by a preponderance of the evidence that the confession was voluntary and that Appellant's waiver of his constitutional rights was knowing and intelligent."

Brown did not, however, develop this argument, nor did he include it in his statement of issues presented. Moreover, his brief did not refer to any of the Supreme Court decisions that have confronted the waiver issue. *See, e.g., Michigan v. Mosley*, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975). Indeed, his brief fails to cite even *Miranda*, which established the right that he now alleges has been violated. Most significantly, Brown did not allege that his statements were admitted in violation of the rule set forth in *Commonwealth v. Mercier*, 451 Pa. 211, 216, 302 A.2d 337, 340 (1973) ("For a waiver to be effective [after a defendant has asserted his right to remain silent] the reversal of the defendant's position must have been initiated by him."), the case he relies on here.

We acknowledge that the waiver issue may be regarded as an aspect of voluntariness. Indeed, the dissenting opinion in *Commonwealth v. Brown*, 482 Pa. 256, 260, 393 A.2d 650, 653 (1978) merged the two issues. *See id.* ("Here, the methods used by the police in extracting a waiver and state-

ment from appellant only indicate that his decision to speak was not voluntary . . . . [O]nce an appellant has exercised his constitutional right to counsel, any action initiated by the police per se is not the free and unconstrained decision of the appellant."). We also are wary of the dangers of penalizing a habeas petitioner for any deficiencies in his marshalling of cases in the difficult area of constitutional criminal procedure.

■ Nonetheless, we do not believe this is an instance in which the issues presented to the state court and the issues raised in Brown's petition involved the same "ultimate question for disposition . . . despite variations in the legal theory or factual allegations." *Picard*, 404 U.S. at 277, 92 S.Ct. at 513. After a careful examination of his briefs, we are not persuaded that the petitioner has met his burden of demonstrating that he had presented the waiver issue so that "the state court [could] be informed of the legal basis for the claim." *Twitty v. Smith*, 614 F.2d 325, 331 (2d Cir. 1979).[2] At most, petitioner presented to the state court the facts on which he bases his *Miranda* waiver claim. We do not believe this satisfies his burden. *See Picard*, 404 U.S. at 277, 92 S.Ct. at 513 (dismissing habeas petition because "the constitutional claim . . . inherent in those facts [presented to the state court] was never brought to the attention of the state courts").

Petitioner's reliance on cases applying the pre-*Miranda* due process standard of voluntariness, his emphasis on the theory of psychological coercion, and his failure to bring any case law to the attention of the state court relating to his waiver argument, cast serious doubt on his claim that he presented a "substantially equivalent" argument to the state court. Thus, we cannot say that he has demonstrated that the "method of analysis" he now advances was "readily available to the state court." *Zicarelli v.*

*Gray*, 543 F.2d 466, 472 (3d Cir. 1976) (en banc).

Finally, Brown does not allege "either an absence of available state corrective process or the existence of circumstances rendering such process ineffective" to protect his rights. 28 U.S.C. § 2254 (1976). We note that the Pennsylvania Post-Conviction Hearing Act, 19 Pa.Stat. §§ 1180–1—1180–13 (1978) would provide petitioner an adequate opportunity to vindicate his newly raised federal claim in a state forum. Indeed, the attorney for the Commonwealth indicated at oral argument that such remedy would be available.

### III.

Because we hold that petitioner failed to exhaust his state remedies, we do not consider the merits of his waiver challenge.

### IV.

The district court will be directed to vacate its order to the extent that it encompasses petitioner's challenge to the admission of inculpatory statements on the ground that the resumption of police questioning after he had asserted his fifth amendment rights was impermissible under *Miranda*. The district court will be directed to enter an order dismissing that portion of the habeas petition for failure to exhaust state remedies pursuant to 28 U.S.C. § 2254 (1976).

---

**2.** Nor can we say that the dissenting opinion in *Commonwealth v. Brown*, 482 Pa. 256, 393 A.2d 650 (1978) "fairly presented" the waiver issue to the majority of the court. In light of our conclusion that petitioner's briefs before the Pennsylvania Supreme Court did not present the issue, it seems likely that the majority did not address the issue because it had not been properly raised by the petitioner. In any event, we are unwilling to assume that a state supreme court would fail to apply its own precedent in a case that properly presented the opportunity.