**Michael BROWN, Petitioner,**

v.

**Elijah TARD, Jr., et al., Respondents.**

**Civ. No. 82–2092.**

United States District Court, D. New Jersey.

Dec. 29, 1982.

**1344**

Michael Brown, pro se.

Hilary L. Brunell, Asst. County Prosecutor, Newark, N.J., for respondents.

## OPINION

LACEY, District Judge.

Petitioner in this habeas corpus action, 28 U.S.C. § 2254, is confined at Trenton State Prison. On January 19, 1979, a jury in New Jersey Superior Court convicted petitioner of first degree murder, N.J.S. 2A:113–1; murder while armed, N.J.S. 2A:151–5; and attempted rape as a lesser included offense, N.J.S. 2A:85–5, 2A:138–1. The court sentenced petitioner to a mandatory term of life imprisonment for first degree murder, to a concurrent term of 5–7 years for murder while armed, and to a consecutive term of 2–3 years for attempted rape. The Appellate Division of the New Jersey Superior Court affirmed the conviction on December 29, 1980. The New Jersey Supreme Court denied petitioner's petition for certification on June 12, 1981.

To support his contention that he is in custody in violation of federal law, petitioner claims:

(1) That an extra-judicial inculpatory statement was made solely as a result of coercion by the police;

(2) That this statement was extracted from him in violation of his rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that the trial court failed to give a limiting instruction when this statement was introduced to impeach petitioner's credibility;

(3) That admission of inflammatory and prejudicial photographs of the decedent's body was improper; and

(4) That hearsay statements were improperly admitted in violation of petitioner's sixth amendment rights to confrontation.

## BACKGROUND

On June 22, 1978 at about 1:50 A.M., Melvin Hickson returned to his apartment, number 409, located at 250 Prospect Street, East Orange, New Jersey, and discovered the body of his girl friend, Shelly Weinstein. She had been beaten with a dumbbell and received multiple stab wounds. The ensuing investigation led to the arrest and conviction of petitioner. The details of the case relevant to this petition, as elicited at trial, follow.

At approximately 8:15 A.M. on June 21, 1978, Shelly Weinstein called Hickson at work. She informed him that her car had been broken into and would not start, and that a building maintenance worker would be up to repair the air conditioner. Decedent called Hickson again between 10:00 A.M. and 10:30 A.M. the same morning and told him that she was not going to work and that the man was there to fix the air conditioner.

When Hickson returned home at 1:50 A.M. on June 22, he observed that the bed had been moved from its usual position near the air conditioner. Screwdrivers were lying on top of the air conditioning unit, which had been opened. Hickson summoned a neighbor who called the police. The police, among other things, took speci-

mens of a bloody palm print on the air conditioner that turned out to be petitioner's.

Petitioner was employed as a maintenance worker in Hickson's apartment building. Other maintenance employees in the building were Carlos Rivas, the superintendent, and James Tinsley. They indicated that they had seen petitioner arrive for work at about 8:00 A.M. on June 21. At about 10:00 A.M. petitioner had indicated he was going to work in apartment 408, which was vacant and adjacent to apartment 409. Petitioner did not appear for his coffee break. Tinsley and Rivas next saw him at about 11:15 A.M., with a fresh cut on his finger.

The police arrested petitioner at approximately 6:00 A.M. on June 22, 1978 at the nearby home of his sister, Marshlean Brown, with whom petitioner lived. Petitioner was taken to the detective bureau at East Orange Police Headquarters.

Detective Mark Dunbar advised petitioner of his *Miranda* rights. At approximately 6:30 A.M., petitioner executed a signed waiver. Petitioner was then interrogated for about an hour by Detective Dunbar and Lt. James McDowall; two other detectives also were present in the interrogation room. Petitioner was handcuffed to an eye-hook during the interrogation, and was in his underwear. The police had taken his clothing as evidence. His sister eventually brought him fresh clothing.

During this initial interrogation, petitioner denied being in Shelly Weinstein's apartment or having any knowledge of the crime. Sgt. Charles Engler interrogated petitioner for about an hour beginning at approximately 9:00 A.M. on June 22. At this time, petitioner stated that he had been in Shelly Weinstein's apartment to repair her air conditioner but had left her alive and well.

The police surgeon, Dr. Eugene Sims, examined petitioner's finger at about 5:00 P.M. on June 22. During this examination petitioner did not complain of police misconduct. No further questioning occurred that day.

At approximately 6:20 A.M. on June 23, 1978, the police received petitioner's permission to recover the clothing he had worn on June 21, 1978, which was at his girl friend's house. This clothing reacted positively for blood of the decedent's blood group.

At 9:50 A.M. on June 23, petitioner consented to having a blood sample taken by the police surgeon. Sgt. Engler administered *Miranda* warnings and petitioner signed a limited waiver indicating that he consented to the blood sample but wished to make no other statement at that time. Petitioner did not complain of misconduct by the police to Dr. Sims.

Later in the morning of June 23, 1978, petitioner was arraigned before Judge Kenneth Williams. Petitioner complained of being beaten by the police. Judge Williams had petitioner sent to East Orange General Hospital. Dr. Nancy Cahiwat, an emergency room physician, treated petitioner at 12:40 P.M. on June 23. She found diffuse swelling and tenderness in the right leg but no other deformities. X-rays of petitioner's chest, rib cage, and right leg were all negative. The swelling in the right leg subsequently was diagnosed as Osgood Slotter's disease. Petitioner was returned to police headquarters.

At approximately 9:45 P.M. on June 23, petitioner was brought out from his cell to pick up clothing brought by his sister. He asked to speak with Sgt. Engler. Petitioner then made an oral statement to Engler, Detective Dunbar, and Lt. McDowall to the effect that he had killed Shelly Weinstein in self defense. At 11:14 P.M. defendant was given *Miranda* warnings, executed a written waiver, and gave a written statement repeating the substance of the oral statement. Petitioner stated that he and Shelly Weinstein had had consensual sexual intercourse and that she had then tried to stab him with a knife. In self defense he hit her with what he thought was a pipe, and stabbed her.

At about midnight, during a coffee break while the written statement was still being taken, petitioner had an asthma attack.

East Orange emergency medical personnel responded. Petitioner indicated to the police that he did not wish to go to the hospital. The statement was completed at 1:45 A.M. on June 24.

At trial, petitioner testified that at about 8:00 A.M. on June 21 he encountered Shelly Weinstein who asked him to repair her air conditioner. He went to her apartment, began draining the air conditioner, and then left for awhile, Miss Weinstein being alive and well. He went to his sister's apartment at 284 Prospect Street until 11:10 A.M. when he returned to Shelly Weinstein's apartment and found her dead. He touched her, became scared because he was on parole, and left the apartment. Petitioner also testified that he was beaten and threatened by police on both June 22 and 23 and that he signed the waivers and made the statements because of this police intimidation.

Also at trial, the government introduced photographs of the decedent's body over petitioner's objection. Finally, the medical examiner testified that Shelly Weinstein died of a fractured skull and contusions of the brain, and also received slash wounds of the throat and stab wounds.

The jury convicted petitioner on three counts, the Appellate Division affirmed, and the New Jersey Supreme Court denied petitioner's petition for certification.

## EXHAUSTION OF REMEDIES

■ A federal habeas corpus petitioner bears the burden of proving he has exhausted his state remedies as required by 28 U.S.C. § 2254(b). *Santana v. Fenton,* 685 F.2d 71, 73 (3d Cir.1982); *Brown v. Cuyler,* 669 F.2d 155, 158 (3d Cir.1982) (per curiam).[1] To demonstrate compliance with the exhaustion requirement, petitioner must show that the federal claim he asserts in federal court has been "fairly presented" to the state courts. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971); *Santana, supra,* 685 F.2d at 73. The argument raised in federal court must be the "substantial equivalent" of that presented in the state courts, *Picard, supra,* 404 U.S. at 277–78, 92 S.Ct. at 513–14, to ensure that "the method of analysis asserted in the federal courts was readily available to the state court." *Zicarelli v. Gray,* 543 F.2d 466, 472 (3d Cir.1976) (en banc). Petitioner's failure to invoke specific constitutional provisions in state court will not preclude a finding of exhaustion where the substance of the state claim is virtually indistinguishable from the constitutional allegation raised in federal court. *Bisaccia v. Attorney General of New Jersey,* 623 F.2d 307, 312 (3d Cir.), *cert. denied,* 449 U.S. 1042, 101 S.Ct. 622, 66 L.Ed.2d 504 (1980). Petitioner, that is, must provide the state courts with a "fair opportunity" to apply controlling legal precedents to the facts bearing upon his constitutional claim. *Picard, supra,* 404 U.S. at 276–77, 92 S.Ct. at 512–13; *accord Anderson v. Harless,* —— U.S. ——, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982) (per curiam).

■ The petitioner must exhaust his state remedies as to each of his federal claims. If a habeas petition contains both exhausted and unexhausted claims the petition must be dismissed for failure to comply with 28 U.S.C. § 2254(b). *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); *Santana, supra,* 685 F.2d at 73.

Having examined the trial court record, the briefs submitted to the New Jersey Appellate Division, and the petition for certification to the New Jersey Supreme Court, we find that petitioner has exhausted his state remedies.[2]

---

1. Although the government has not argued failure to exhaust, it is proper for this court to consider the issue on its own. *See Santana,* 685 F.2d 71, 73 n. 2 (3d Cir.1982); *Batten v. Scurr,* 649 F.2d 564, 567 (8th Cir.1981).

2. Petitioner's habeas corpus petition essentially reproduces the respective sections of his Appellate Division brief. In this circumstance, there is a significant overlap between the questions whether petitioner has presented cognizable federal claims and whether he has fully exhausted those claims. Overlap, however, is not identity. The claims petitioner alludes to could be sufficient for a district court to find they are cognizable but insufficient to find that they had

■ Petitioner claims that his June 23 statement should not have been found admissible since it was coerced. Petitioner plainly has exhausted his state remedies on this issue. His Appellate Division brief, and his petition for certification, which relies on this brief, clearly set forth the same constitutional argument on the voluntariness of confessions as is urged on this court.

Petitioner also claims that the June 23 statement was obtained in violation of his *Miranda* rights and therefore was inadmissible as substantive evidence. Petitioner presented this claim to the state courts. The relevant point heading in his Appellate Division brief assets that the statement "was unconstitutionally obtained without proper warnings." The brief posed the issues before the Appellate Division as "whether the *Miranda* warning given early in the morning of June 22 ... was adequate and sufficient to cover the interrogation of ... June 23," and whether "the defendant knowingly and intelligently relinquished [his] rights." (12 Tr. 21–22). Petitioner referred the state courts both to New Jersey and federal cases discussing the question of renewal of *Miranda* warnings.[3] Although petitioner did not cite to the most recent Supreme Court cases on the question of waiver of *Miranda* rights, the arguments he presented certainly afforded the state courts the opportunity to apply such precedents to petitioner's case.

■ Petitioner further claims that the government introduced the June 23 confession to impeach petitioner's credibility and that the trial court erred in not giving a proper limiting instruction to the jury. Petitioner presented this argument to the state courts as an aspect of his claim that his *Miranda* rights had been violated, citing

*Harris v. New York,* 401 U.S. 222, 91 S.Ct. 643, 28 L.Ed.2d 1 (1971) and *State v. Miller,* 67 N.J. 229, 337 A.2d 36 (1975), in which the New Jersey Supreme Court first followed *Harris.* We understand petitioner's argument to this court to be substantially equivalent and, accordingly, find that petitioner has exhausted his state remedies as to this claim.

■ Petitioner's third ground for relief is that the trial judge's decision to admit photographs of the decedent's body was erroneous because the photographs were inflammatory and highly prejudicial. Although the question whether petitioner has exhausted this claim is close, this court finds that he has. An evidentiary error by a state court rises to constitutional proportion only if it renders the trial "fundamentally unfair." *Donnelly v. DeChristoforo,* 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). Petitioner's habeas corpus petition, like his Appellate Division brief, alleges that the trial judge abused the discretion afforded him by the state rules of evidence when he found that the probative value of the photographs outweighed the prejudicial impact. Neither the brief nor the petition mentions due process, the fourteenth amendment, or fundamental fairness. Mindful that complaints are to be liberally construed in the federal courts, especially when a party is proceeding *pro se, Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1971), we find that petitioner's habeas petition nevertheless can reasonably be understood to raise a due process claim.

Moreover, in these circumstances petitioner's failure to use specific constitutional language is not fatal for purposes of exhaustion. The state courts found that the

been "fairly presented" to the state courts. Here, however, we find that petitioner has presented his federal claims to the state courts.

3. These facts distinguish this case from *Brown v. Cuyler,* 669 F.2d 155 (3d Cir.1982) (per curiam), in which the Third Circuit found that petitioner had not exhausted his claim that his confession was obtained in violation of *Miranda.* Unlike petitioner here, the petitioner's briefs in *Brown v. Cuyler, supra,* relied on

cases applying the pre-*Miranda* due process standard of voluntariness and, indeed, did not cite *Miranda* itself or any state or federal cases involving challenges to convictions brought on *Miranda* grounds. *Brown v. Cuyler, supra,* 669 F.2d at 160. In those circumstances, the Third Circuit found that petitioner had not fairly presented the state courts with the substantial equivalent of petitioner's *Miranda* argument.

photographs were not sufficiently inflammatory for their prejudicial effect to outweigh their probativeness. It is inconceivable that in finding prejudice outweighed by probativeness the state courts did not implicitly hold that admitting the photographs did not violate petitioner's rights to due process of law. *See Hackett v. Mulcahy,* 493 F.Supp. 1329, 1335 (D.N.J.1980). Given the nature of the evidentiary issue before the state courts, this court finds that the method of analysis available here was readily available to the state courts. Accordingly, we find that petitioner has exhausted his state remedies as to this claim.

■ Finally, petitioner claims that the trial court's admission of hearsay evidence violated his sixth amendment right to confrontation. Although petitioner's Appellate Division brief most clearly advanced the argument that the trial judge erred in applying N.J.Evid.R. 63, we find that petitioner's confrontation clause challenge is fairly discernible. Petitioner's brief stated that the "erroneous admission of hearsay testimony violates a defendant's Sixth Amendment right to confrontation," and that "the defendant could not confront and cross-examine that statement [by decedent] in any significant way." (12 Tr. 30–31). The court finds that petitioner's arguments, though somewhat abstract and conclusory, were sufficient to alert the state courts to his sixth amendment claim and make available to the state courts the method of analysis urged here. *See Morrow v. Wyrick,* 646 F.2d 1229, 1232 (8th Cir.1981), *cert. denied,* 454 U.S. 899, 102 S.Ct. 401, 70 L.Ed.2d 216 (1982). Petitioner, thus, has exhausted his state remedies as to his final claim as well as to his other claims.

### MERITS

The scope of review of a federal court in a petition for a writ of habeas corpus is carefully defined in 28 U.S.C. § 2254(d) with respect to relief from a state court conviction. Where the state court has held a hearing and made factual findings, section 2254(d) provides that a federal court must apply a "presumption of correctness"

to the findings unless it is established that one of the statutory exceptions is present. If none of the eight enumerated exceptions exists, then petitioner must show by "convincing evidence" that the state court's factual findings are erroneous. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

■ Petitioner's first claim is that his June 23 statement was the product of coercion by the police and, thus, that its introduction as evidence at trial violated due process. The voluntariness of a confession is to be viewed as a mixed question of law and fact. *United States ex rel. Rush v. Ziegele,* 474 F.2d 1356, 1358 (3d Cir.1978). A federal habeas court, therefore, must not only determine whether petitioner has rebutted the presumption of correctness of the state court's factual findings, but must independently determine whether controlling legal principles, as applied to the facts, support the state court's conclusion on voluntariness. *See Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290 (1978); *Robinson v. Smith,* 451 F.Supp. 1278, 1284 (W.D.N.Y.1978); *see generally Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

■ The test for voluntariness of a confession is whether an examination of the totality of the circumstances indicates that defendant's will was not overborne and that the confession was the product of a rational intellect. *See Culombe v. Connecticut,* 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961); *United States v. Arcediano,* 371 F.Supp. 457, 466 (D.N.J.1974); *see also Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Before admitting petitioner's written statement into evidence, the trial judge conducted two days of thorough suppression hearings out of the presence of the jury. Defense counsel was given full opportunity to cross-examine witnesses. The suppression hearing judge made a specific finding that petitioner's testimony that he was beaten and threatened by police was not credible (4 Tr. 58). The suppression hearing

judge further observed that petitioner was highly intelligent and knowledgeable about police procedures due to his prior arrests, convictions and time spent on parole (4 Tr. 58). Given the totality of the circumstances, the suppression hearing judge found that petitioner's statements were voluntary.

■■■ Under § 2254(d), the suppression hearing judge's findings of fact are presumptively correct. After a careful review of the record, this court finds that petitioner has failed to rebut this presumption by convincing evidence, and that the state court's findings of fact, including its credibility determinations, are supported by the evidence presented at the suppression hearing. Applying the legal test of voluntariness to these facts, this court finds that petitioner's statements were voluntary.[4]

Petitioner also claims that the June 23 statement was obtained in violation of his *Miranda* rights. The record shows that petitioner received proper *Miranda* warnings, and executed written waivers, at approximately 6:30 A.M. on June 22 and again at approximately 11:15 P.M. on June 23, immediately prior to his giving the written statement. Petitioner argues that this written confession must be excluded since it was the direct product of an oral confession obtained by police at approximately 10:00 P.M. on June 23 without their having given petitioner a new set of warnings.

■■■ *Miranda* does not require that a fresh set of warnings be repeated each time the police resume interrogation after an interruption. Although the better practice is to readminister warnings, failure to do so will not necessarily result in the inadmissibility of the second statement. The ultimate question in such cases is whether the defendant waived his legal rights. *See Miller v. United States,* 396 F.2d 492, 495–96 (8th Cir.1968), *cert. denied,* 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969); *Maguire v.*

*United States,* 396 F.2d 327, 331 (9th Cir. 1968), *cert. denied,* 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969); *Grennier v. Israel,* 472 F.Supp. 1301, 1303 (E.D.Wisc. 1979); *Moore v. Hopper,* 389 F.Supp. 931, 933–34 (M.D.Ga.1974), *aff'd,* 523 F.2d 1053 (5th Cir.1975); *United States v. Kinsey,* 352 F.Supp. 1176, 1178 (E.D.Pa.1972).

■■■ The standard for waiver is whether there was "an intentional relinquishment or abandonment of a known right." *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938); *accord Brewer v. Williams,* 430 U.S. 387, 405, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977); *Brown v. Cuyler, supra,* 669 F.2d at 160. The government has the burden of establishing waiver by a preponderance of the evidence. *See id.*

■■■ Petitioner has not rebutted the presumption of correctness of the suppression hearing judge's factual findings with convincing evidence as required by 28 U.S.C. § 2254(d). The suppression hearing judge observed that petitioner was highly intelligent and well knowledgeable about police procedures (4 Tr. 58). The record shows that petitioner received *Miranda* warnings on the morning of June 22, prior to being interrogated, and executed a written waiver. Petitioner also received a *Miranda* warning at about 9:50 A.M. on June 23. This warning was administered for the purpose of obtaining a blood sample from petitioner. Petitioner consented in writing to this procedure, indicating he wished to make no other statement at that time. Finally, the suppression hearing record reveals that on the night of June 23, petitioner requested to speak to Sgt. Engler.

After a careful review of the record, and in view of the suppression hearing judge's findings as to the petitioner's mental capacities and experience, the correct sets of warnings given petitioner,[5] and petitioner's

---

4. The state court judge did conflate somewhat the voluntariness standards and the tests for waiver of *Miranda* rights. This court, however, has independently found that the government has met its burden of proving voluntariness by a preponderance of the evidence. *See Lego v.*

*Twomey,* 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972).

5. In view of the June 22 warning and waiver, we find that the blood sample warning, although administered for a limited purpose, did

having initiated the June 23 meeting with police, *see Edwards v. Arizona,* 451 U.S. 477, 485–86, 101 S.Ct. 1880, 1885–86, 68 L.Ed.2d 378 (1981),[6] I find that the government has met its burden of showing that petitioner knowingly and intelligently waived his *Miranda* rights as to both the oral and written statements given on June 23, 1978.[7]

■ Petitioner's claim that the trial court violated *Harris v. New York, supra,* by failing to give a limiting instruction as to the permissible use of the June 23 statement is without merit. Since we have found that the statement was not obtained in violation of petitioner's *Miranda* rights, no limiting instruction was constitutionally required.[8]

■ Petitioner also contends that he was denied due process through the introduction of inflammatory photographs of the victim. As a general rule, a federal habeas corpus court will not review the state trial court's action in admitting evidence. *See Lisenba v. California,* 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941); *Davis v. Campbell,* 608 F.2d 317, 319 (8th Cir.1979) (inflammatory photographs); *Mercado v. Massey,* 536 F.2d 107, 108 (5th Cir.1976) (same). An evidentiary ruling that deprives a state court defendant of funda-

mental fairness, however, is cognizable in habeas corpus. *Donnelly v. DeChristoforo, supra,* 416 U.S. at 642–43, 94 S.Ct. at 1871; *United States ex rel. Mertz v. New Jersey,* 423 F.2d 537, 540 (3d Cir.1970) (police photographs). Thus, a habeas court will inquire into the admission of photographs only to determine whether the alleged error was of such magnitude as to deny fundamental fairness. *Nettles v. Wainwright,* 677 F.2d 410, 414 (5th Cir.1982).

■ Upon examination of the photographs in question, this court finds that they are not unduly inflammatory or gruesome and their introduction into evidence not so critical as to deny petitioner a fundamentally fair trial.

Finally, petitioner claims that the admission into evidence of two hearsay statements violated his sixth amendment confrontation rights. Petitioner challenges Melvin Hickson's testimony relating the substance of two telephone conversations he had with Shelly Weinstein on the morning of June 21, 1978. The first conversation occurred at approximately 8:15 A.M. Hickson testified that Shelly Weinstein said that her car had been broken into and would not start, that she was waiting for the police, and that she had "run into one of the guys in the building, the maintenance guys, and

---

serve to reacquaint petitioner with his rights. Whether, standing alone, a blood sample warning would constitute an adequate *Miranda* warning for a subsequent confession is an issue this court need not address.

**6.** *Edwards* addresses the question of when police may initiate further interrogation once a defendant has invoked his *Miranda* rights. The Court held that a showing that defendant responded to further police questioning would not, by itself, establish a valid waiver of the fifth amendment right to counsel. *Edwards v. Arizona,* 451 U.S. 477, 484, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981). The Court stated, however, that if Edwards had initiated the second meeting "nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial." *Id.* at 485, 101 S.Ct. at 1885. If, as seems to be the case here, after the defendant initiated a further conversation the police asked questions that amounted to interrogation, the question would then become

whether there was a valid waiver under the *Zerbst* standard. *See Edwards v. Arizona, supra,* 451 U.S. at 486 n. 9, 101 S.Ct. at 1886 n. 9. That the accused, not the police, reopened the dialogue is a relevant factor in determining whether, under the totality of the circumstances, a waiver has occurred. *Id.*

**7.** Since this court finds that the June 23 oral statement was not obtained in violation of *Miranda,* it need not reach the question whether a valid second confession should be excluded as a "fruit" of a first confession obtained in violation of *Miranda. See, e.g., United States v. Nash,* 563 F.2d 1166, 1169 (5th Cir.1977) (second confession tainted by initial confession and is excluded).

**8.** The court also notes that New Jersey permits a witness' prior inconsistent statement to be admitted as substantive evidence. *See* N.J. Evid.R. 63(1), Comment 1. Thus, there was no error under the state rules of evidence.

that he was going to come up to fix the air conditioner" (4 Tr. 99). The second call occurred sometime between 10:00 A.M. and 10:30 A.M. Hickson testified that Shelly Weinstein said she was not going to go to work and that "the guy is here to fix the air conditioner" (4 Tr. 100).

■■■■ The right of confrontation does not preclude the use of hearsay evidence. *Dutton v. Evans*, 400 U.S. 74, 80–82, 91 S.Ct. 210, 215–216, 27 L.Ed.2d 213 (1970). *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), sets forth the relationship between the confrontation clause and hearsay testimony:

> "[W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." [*Id.* at 66, 100 S.Ct. at 2539.]

The first aspect of *Roberts* is here satisfied since Shelly Weinstein indisputably was "unavailable."

■■■ The state trial judge ruled that Hickson's testimony as to the second telephone conversation was admissible under N.J.Evid.R. 63(4)(a), the New Jersey equivalent of the "present sense impression" exception to the hearsay rule set forth in Fed.R.Evid. 803(1). Under this exception, a statement describing or explaining an event made while declarant was perceiving the event is admissible as a hearsay exception. Reliability is ensured by the substantial

contemporaneity of the statement and the event described which negates the likelihood of calculated misstatement.

Shelly Weinstein's statement that a man was there to fix the air conditioner meets the requirements that the declarant personally perceive the event, that the statement explain or describe the event, and that there be contemporaneity of the statement and the event described. Hickson's testimony thus falls within the present sense impression exception to the hearsay rule. Under *Roberts*, reliability for confrontation clause purposes may thus be inferred. Moreover, there are also circumstantial guarantees of reliability. Hickson's air conditioning unit was open and tools were found on top of it, and petitioner himself testified that he went to Shelly Weinstein's apartment to fix her air conditioner. In addition, Shelly Weinstein's statement was made in a natural manner and under circumstances where there was no motive for falsity. Admitting this statement did not violate petitioner's confrontation clause rights.

The trial judge also ruled testimony relating the substance of the first telephone call, at 8:15 A.M., admissible under N.J.Evid.R. 63(4) (4 Tr. 96–97). We have some doubt as to whether the time lapse between the event and Shelly Weinstein's statement describing it is sufficiently short to comply with Rule 63(4)'s requirement that the statement be made "while the declarant was perceiving an event." [9]

■■■ We find, however, that the statement might be admitted under the "state of mind" exception set forth in N.J.Evid.R. 63(12)(a), the counterpart to Fed.R.Evid. 803(3), and, in particular, under that species of the exception first announced in *Mutual*

---

9. Under the federal rule, a statement describing or explaining an event is admissible if made while the declarant was perceiving the event "or immediately thereafter." Fed.R.Evid. 803(1). The question of what time interval is too long to satisfy this requirement has proved troublesome, and no fixed rule has emerged. *Compare Hilyer v. Howat Concrete Co., Inc.*, 578 F.2d 422, 426 n. 7 (D.C.Cir.1978) (period of fifteen to forty-five minutes between event and

statement too long) *with United States v. Blakey*, 607 F.2d 779, 785–86 (7th Cir.1979) (period between several minutes and twenty-three minutes is not too long to admit evidence under 803(1) given substantial circumstantial evidence corroborating the statement).

The New Jersey rule is, by its own terms, more restrictive since it does not include the phrase "or immediately thereafter."

*Life Ins. Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892). Under this exception, hearsay statements reflecting a declarant's intentions or future plans are admissible to show that the intended act was subsequently performed. *See id.; State v. Thornton,* 38 N.J. 380, 389–90, 185 A.2d 9 (1962), *cert. denied,* 374 U.S. 816, 83 S.Ct. 1710, 10 L.Ed.2d 1039 (1963). Under the *Hillmon* doctrine, statements are admissible not only to prove the future conduct of the declarant but also the future conduct of other persons when the declarant's intention requires the action of these other persons if it is to be fulfilled. *See Hillmon, supra,* 145 U.S. at 295–300, 12 S.Ct. at 912–914.

Shelly Weinstein's statement at 8:15 A.M. reflected her intention or future plan to await the arrival of a maintenance man to repair the air conditioner and, under the *Hillmon* state of mind exception, is admissible to prove both her subsequent conduct and that of the maintenance man. In the federal system, though, there is debate over whether Rule 803(3) makes declarations of intention admissible to prove only declarant's future conduct, or whether it embodies the *Hillmon* doctrine in full. *Compare* H.R.Rep. No. 93–650, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Admin.News 7051, 7075, 7087 (rule limited to declarant's future conduct) *and United States v. Jenkins,* 579 F.2d 840, 843 (4th Cir.), *cert. denied,* 439 U.S. 967, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978) *with* Advisory Committee Note to Rule 803(3) (*Hillmon* doctrine "left undisturbed") *and United States v. Pheaster,* 544 F.2d 353, 379–80 (9th Cir. 1976), *cert. denied,* 429 U.S. 1099, 97 S.Ct. 1118, 51 L.Ed.2d 546 (1977); *see also United States v. Cicale,* 691 F.2d 95, 103–04 (2d Cir.1982). New Jersey's Rule 63(12)(a) has not been the subject of a similar debate. *Cf. United States ex rel. Jacques v. Hilton,* 423 F.Supp. 895, 899 (D.N.J.1976) (habeas corpus review of state homicide conviction; evidence that victim told witness that he was in fear of defendant and expected to be killed was within scope of N.J.Evid.R. 63(12) and admissible).

In any event, petitioner is not entitled to habeas corpus relief even if the first telephone conversation is not admissible under either N.J.Evid.R. 63(4)(a) or N.J.Evid.R. 63(12)(a). Since the content of the admissible second telephone conversation is very close to that of the first conversation, and in view of petitioner's own testimony that he went to Shelly Weinstein's apartment to repair the air conditioner, as well as other circumstantial evidence placing petitioner in the apartment, we find that any error in admitting the first telephone conversation was harmless beyond a reasonable doubt. *See Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[10]

For the foregoing reasons, the petition for habeas corpus is denied. There is no probable cause for appeal.

---

**10.** For this reason, we need not search for "particularized guarantees of trustworthiness."

*See Ohio v. Roberts,* 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980).